212 So.2d 687

**Leslie Edward WILLIAMS**

**v.**

**STATE.**

**7 Div. 894.**

Court of Appeals of Alabama.

May 21, 1968.

Rehearing Denied June 28, 1968.

**444**

Arthur Parker, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and John A. Lockett, Jr., Asst. Atty. Gen., for the State.

CATES, Judge.

Williams appeals from a judgment of conviction after verdict on an indictment for second degree burglary. The trial judge sentenced him to six years in the penitentiary.

Appellant's motion for new trial was overruled.

### I.

About 9:30 P.M. September 30, 1966, two members of the police force of Childersburg, Alabama, were riding in a car on patrol. They were proceeding through a rather poorly lighted portion of the city west of U. S. Highway 280. They were on the Old Ferry Road which goes through a housing project. Most of the project tenants were Negroes.

Coming in from a side street, the officers observed three white men in a 1959 Chevrolet which pulled in front of them and proceeded along the same course. At least one of the officers testified that the trunk of the car was opened approximately six inches.

The officers followed the car for about a block; the Chevrolet hit a pothole and its trunk lid flew open. There before the eyes of the policemen could be seen two iron wheels and the body of a black metallic object resembling a safe.

The officers overtook the Chevrolet. On their stopping it, Appellant Williams, who was driving, got out and came to the back of the Chevrolet and attempted to push the trunk lid down. The officers descried enough of the object to see that it was, in fact, a safe with a combination lock. All of this they saw before Williams tried to push the trunk lid down.

One of the other occupants of the car turned State's evidence and described the breaking and entering of the house of a Mr. Owen P. Grier and finding the safe on a screened back porch. He and the third man, Mr. Payne, had gone to the house; and, after finding the safe, took

it out in the yard, then sent for Williams who was waiting a few blocks away on the highway. The three managed to get the safe in the trunk.

The police officers testified that the defendant and his companions were sweating profusely at the time of the arrest, although the night was not particularly warm.

Mr. Grier arrived home shortly after Williams and his accomplice were arrested and taken to the Childersburg police station. He telephoned to report a burglary, and the desk sergeant said, "You must have lost a safe." Grier then went to the station and identified the safe as his. There was testimony that it contained some $10,000.00 or $15,000.00.

The appellant took the stand and sought to explain away the accomplice's testimony by stating that he was summoned from Birmingham to come help the accomplice and Mr. Payne take some unspecified object back to Birmingham, because the accomplice's car had broken down in Childersburg.

## II.

■ We have carefully considered the evidence tending to connect the defendant with the commission of the crime. After excising the accomplice's testimony, we consider that there is enough incriminatory testimony to connect Williams with the commission of the offense under the requisites of Code 1940, T. 15, § 307.[1]

## III.

■ Williams's counsel made a pretrial motion to suppress the testimony concerning the seizure of the safe by the police officers without a warrant.

It will be remembered, first, that the circumstances of the seizure would support an inference by a reasonable man that the open trunk of the car, after hitting the pothole, did, in fact, contain a safe. Being open to view in the headlights of the police patrol car, the examination of the safe, after Williams's Chevrolet was stopped, was not a probing into secret places. Hence, considering the time of night, the particular locale and the mobility of an automobile, with what later turned out to be incriminatory evidence, the conduct of these officers was a highly proper police procedure. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Thompson v. State, 41 Ala.App. 353, 132 So.2d 386.

The fallacy of Williams's motion to suppress can be tested by hypothesizing the situation if the officers were to have decided that they had no probable cause in the circumstances. Under this analysis, not only would evidence of the crime have been spirited away, but also the property, as it later turned out, which belonged to Grier might have been lost in the process. This recognition of the highly mobile adjunct to crime given by the motor vehicle is the foundation of the *Carroll* case, supra.

We consider that in the circumstances here no warrant was needed to search and seize Mr. Grier's safe from Mr. Williams's automobile.

We have carefully considered the entire record and conclude that the judgment below is due to be

Affirmed.

1. "§ 307. A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corrobative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."